Daniel J. 0 ’Mara, J.
On June 26, 1958 the petitioners made application to the New York State Liquor Authority for a renewal of a wholesale beer license, a license which had been issued to the petitioners annually for a period of 10 years prior to July 1,1958.
Upon receipt of the petitioners’ application for a renewal of their beer license, the New York State Liquor Authority arranged for an investigative interview on July 2, 1958. At the time of this interview the petitioners gave sworn testimony, as did Joseph Monachino a son of one of the petitioners, and State Trooper Vincent Vasisko. At this interview the petitioners were questioned as to their knowledge of a gathering on November 14, 1957 at the home of a Mr. Barbara located at Apalaehin, New York at which time the petitioners were present, along with 50 or 60 other persons, some of whom had criminal records. It will be observed that the word “ gathering ” is used instead of the word “ meeting ”, and for the reason that these proceedings are absolutely devoid of any proof that there was a meeting at the home of Mr. Barbara on November 14, 1957 in the commonly accepted meaning of that word.
Upon learning of the presence of the petitioners at the Apalaehin gathering, the Liquor Authority instigated the first of its investigative interviews of the petitioners in connection with the conduct of the business operated by the petitioners under and by virtue of the wholesale beer license issued by the Authority for the year 1957. This interview took place on *668 November 25, 1957. A second and similar investigative interview was conducted by the Authority under date of June 3, 1958. At each of the three interviews conducted by the Liquor Authority the petitioners gave sworn testimony to the effect that they went to the home of Mr. Barbara on the date in question for the purpose of purchasing a trailer for the delivery of beer from the Budweiser Brewery located in Newark, New Jersey. This sworn testimony stands uncontradicted. The Authority maintains that such testimony is unbelievable, especially in view of the fact that the petitioners on the date of the gathering, when questioned by the State Trooper who testified at the interview of July 2, 1958, stated that the reason for their presence at the gathering was to see their friend, Mr. Barbara. It appears, however, upon the completion of the cross-examination of the trooper at the hearing of July 2, 1958 that he was not sure whether the petitioners did or did not mention the facts relative to the purchase of a trailer.
As a result of the investigative interview of July 2, 1958 the Authority under date of July 17, 1958 issued a notice of disapproval of the petitioners’ application for a renewal of their wholesale beer license, by coming to the conclusion based upon its three interviews of the petitioners, coupled with other information brought to its attention by its investigating agencies “ that in view of all the facts disclosed it appears that the licensees are not fit and proper persons to continue to hold a license and that renewal of this license would create a high degree of risk in the administration and enforcement of the A. B. C. law ”. This reason, which is the basis for the Authority’s denial of petitioners’ application for a renewal of their license, is conclusory in character and entirely lacking in a statement of the essential and necessary facts to sustain the conclusion arrived at.
The records of this proceeding contain not a single fact to warrant the Authority’s determination that the petitioners are not fit and proper persons to hold a license. It is difficult to understand how the Authority could possibly come to such a determination, especially in view of the memorandum of June 23, 1958 to the Authority from Deputy Commissioner Schmidt which stated as follows with reference to the character and reputation of the petitioners: “ The Authority conducted a thorough investigation as to the background of the licensees and interviewed more than twenty-five representatives of state, federal and local agencies, but did not obtain any derogatory evidence or adverse information as to their character, reputation and activities.”
*669 The record of these proceedings failed to. establish any facts linking the petitioners with any violation of law .based upon their presence at the home of Mr. Barbara on November 14, 1957. The action taken by the Authority in its refusal to renew petitioners’ beer license is based solely upon suspicion, speculation, surmise and guesswork. It is a well-known principle of law that no verdict of a jury and no determination by an administrative agency can be sustained if based upon such speculations, and more especially in this case when the determination of the administrative agency deprives citizens of a valuable property right which they have enjoyed for a period of 10 years by virtue of the same Authority which now determines that the said property right may not be continued.
It is likewise a well-established principle of law, in reviewing determinations made by an administrative agency such as the New York State Liquor Authority, that if the conclusions arrived at have any substantial support in the evidence, the determination should not be interfered with even though the court does not share the determination arrived at by the administrative agency.
The petitioners in this proceeding have no criminal record, as a matter of fact it appears that neither has ever been arrested, and although there have been numerous investigations by law enforcement officials throughout the State of New York for the purpose of ascertaining as to whether there was committed a violation of any penal statute of this State, up to the present moment not a single person in attendance at the said gathering has been arrested and charged with any such violation. The petitioners are being penalized by the Authority because a number of those in attendance at the gathering of November 14, 1957 had criminal records. I know of no statute which makes it unlawful to be found in the company of known criminals, unless there is proof that the association with such criminals was for the purpose of doing or planning something unlawful, and even under those circumstances there must be proof of an intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned.
As a matter of fact, according to the newspapers, the recently created New York State Crime Commission is presently endeavoring to ascertain the facts in connection with the Apalachin gathering, and it appears to be using extraordinary and unprecedented procedures for the purpose of ascertaining the said facts. Reference is made to the commission’s present investigation solely for the purpose of further demonstrating that the New York State Liquor Authority was in possession of no *670 evidence when on July 17, 1958 it refused to renew the petitioners ’ wholesale beer license and for the reason that the applicants were “ not fit and proper persons to continue to hold a license.” This conclusory statement was arrived at by the Authority based solely and wholly upon the one fact that the applicants were at the home of Mr. Barbara on November 14, 1957.
It might be well to point out that the Authority had no more proof in its possession as to any wrongdoing on the part of the petitioners on July 17, 1958, the date upon which the application for a renewal of the license was disapproved, than it had at the conclusion of its first investigative interview of November 25, 1957. That being' so, one might well ask why did not the Authority revoke the petitioners’ beer license upon the conclusion of the interview of November 25, 1957? The fact is that the Authority was not in possession of sufficient facts to cause a revocation of petitioners’ wholesale beer license at any time covering the period from November 14, 1957 to the date upon which the license automatically expired, and it is self-evident that that is the reason why there was no order of revocation. As bearing upon the question as to whether the action taken by the Authority in disapproving the renewal application was arbitrary and capricious, the Authority was accused at the very start of its investigative interview of July 2, 1958 with having already determined that the petitioners’ application for a renewal of their beer license was to be disapproved. This accusation was not challenged.
It is not believed, as stated by the Authority, that the reissuance of petitioners’ license will in any way create a high degree of risk in the administration and enforcement of the Alcoholic Beverage Control Law. If perchance facts are brought to light which definitely establish an unlawful purpose in connection with the now famous get-together of November 14, 1957, the Authority will then be in a position to take the necessary steps to revoke any license issued to the petitioners.
There being no basis in fact for the disapproval on the part of the New York State Liquor Authority of petitioners’ application for a renewal of its wholesale beer license and the action taken being unauthorized in law, the denial of petitioners’ application for a renewal of its license is hereby vacated and set aside, and the New York State Liquor Authority is hereby directed to approve petitioners’ application for a renewal of their wholesale beer license, and this direction is to be complied with forthwith.
Submit order accordingly.